UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA VAN ETTA, <br><br> Plaintiff, <br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and DOES 1-100, inclusive, <br><br> Defendants. | Case No.: 12-CV-05200-LHK <br><br><br> ORDER GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Patricia Van Etta filed this suit against her automobile insurer, Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), and other unnamed agents and employees of State Farm, alleging various California state law claims in connection with State Farm's refusal to provide insurance coverage regarding a car accident. *See* ECF Nos. 1 (State Farm's Notice of Removal), 1-1 (Compl.). State Farm has moved for summary judgment and partial summary judgment on multiple grounds. *See* ECF No. 23. Van Etta filed an Opposition, *see* ECF No. 40, and State Farm filed a Reply and objections to certain evidence, *see* ECF Nos. 41, 42. The Court finds the Motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and therefore VACATES the hearing set for March 20, 2014. Having considered the briefing, the record in this case, and applicable law, the Court GRANTS the Motion for the reasons stated below.

1

Case No.: 12-CV-05200-LHK
ORDER GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT

## I.  BACKGROUND

The Court recites only the facts relevant to its disposition of this Motion, taking all inferences in favor of the non-moving party, Van Etta. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

### A.  The Insurance Policy

On June 12, 2010, Van Etta purchased a 2009 Chrysler PT Cruiser, along with a six-month State Farm automobile insurance policy in connection with that car. The parties do not dispute that Van Etta made a payment of $179.00 that State Farm credited to the policy at issue. *See* Decl. of Patricia Van Etta (ECF No. 40-1, "Van Etta Decl.") ¶ 2; State Farm's Notice of Mot. and Mem. of Points and Authorities (ECF No. 23, "Mot.") at 4. However, the parties disagree about the circumstances of this initial payment. Van Etta claims that on June 12, 2010, she spoke to a State Farm employee who told her that the entire cost of the six-month policy was $179.00, such that she paid the full price on that date. *See* Van Etta Decl. ¶ 2. State Farm presents no evidence to dispute the assertion that this conversation occurred, but states that Van Etta's policy cost substantially more than the sum she paid, that her initial payment was only a "partial payment" for the policy, and that she still owed $151.27. Mot. at 4. Based on the initial payment, State Farm issued a binder—a temporary policy—to Van Etta with an effective date of June 12, 2010. Mot. Ex. 15, Ex. Page 075 (ECF No. 31-1).

Afterwards, State Farm sent several notices to Van Etta regarding her policy. In a "Balance Due Notice" dated June 15, 2010 and addressed to Van Etta, State Farm indicated that the total premium for the six-month policy was $356.77 and that Van Etta owed $177.77 ("PLEASE PAY THIS AMOUNT") by July 16, 2010. Mot. Ex. 3, Ex. Page 045. However, a similar notice dated June 21, 2010 stated that the total premium was $330.27 and that Van Etta owed $151.27 by July 22, 2010. Mot. Ex. 4, Ex. Page 047. State Farm explains this reduction in the stated total premium as the result of a multi-policy discount that State Farm subsequently applied. *See* Mot. at 4. State Farm then prepared another notice dated June 23, 2010, which indicated the revised total premium of $330.27 and stated that Van Etta still owed $151.27 by July 24, 2010. Mot. Ex. 5, Ex. Page 049.

1   While each of these notices lists only a "Prepared" date, State Farm submits an employee
2   declaration stating that each notice was "prepared and mailed" on the listed date (Decl. of Rebekah
3   Bridgette (ECF No. 24, "Bridgette Decl.") ¶¶ 6-8), and Van Etta does not dispute that she received
4   those notices.

State Farm also sent Van Etta a copy of her policy, which included a Declarations Page dated June 24, 2010. Mot. Ex. 1, Ex. Page 003. The Declarations Page instructs: "DO NOT PAY PREMIUMS SHOWN ON THIS PAGE. SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE." *Id.* However, no separate statement with an amount due appears in the copy of the policy in the record. *Id.*, Ex. Pages 003-040. Additionally, the Declarations Page includes two different total premiums: $311.77 and $330.27. *Id.*, Ex. Page 003. State Farm again attempts to explain this discrepancy as the result of a multi-policy discount. *See* Reply at 3 n.2. In either case, the stated premium exceeds the $179.00 that Van Etta initially paid on June 12, 2010.

In her Declaration, Van Etta states that "it appears that [she] made a payment of $151.27 on or about August 2, 2010," based on an account record that State Farm produced. Van Etta Decl. ¶ 5. That account record indicates a balance due ("BAL DUE") of $151.27, with a date of August 2, 2010 at the bottom ("DT 08-02-10"). *Id.* Ex. A. The parties provide no other receipts, bank statements, or discovery responses regarding this account record.

In a subsequent "Balance Due Notice" dated August 9, 2010, State Farm stated that Van Etta still owed $151.27 by September 1, 2010, and that the premium Van Etta had paid would continue her policy only until September 20, 2010. Mot. Ex. 6, Ex. Page 051. On September 8, 2010, State Farm prepared a "Cancellation Notice," which stated that Van Etta's policy "is hereby canceled effective 12:01 A.M. standard time SEP 21, 2010 due to non-payment of the premium." Mot. Ex. 7, Ex. Page 053. State Farm provides a declaration and receipts to confirm that the Cancellation Notice was mailed to Van Etta on September 8, 2010. *See* Decl. of Bill Isenhart (ECF No. 26, "Isenhart Decl.") ¶¶ 6-9; Mot. Exs. 11-13, Ex. Pages 064-069. Van Etta did not make any additional payments to State Farm before the stated cancellation date.

**B.     The Insurance Dispute and This Litigation**

On October 12, 2010—three weeks after her policy cancellation date—Van Etta was involved in a car accident with Claudia Giacomini, who was also a State Farm customer. *See* Van Etta Decl. ¶ 6. Immediately following the accident, Van Etta told her son to report the accident to State Farm, and when her son was told that there was an outstanding balance on the policy, he "rushed home" to get money and then paid the balance. *See* Mot. Ex. 39, Ex. Pages 250-52.

Van Etta filed a claim with State Farm in its capacity as her insurance provider, as well as a personal injury claim against Giacomini. *See* Compl. ¶¶ 10-11. Van Etta eventually settled her claim against Giacomini and State Farm (as Giacomini's insurer), executing a release dated November 23, 2011:

> [T]he undersigned hereby releases and forever discharges Claudia Giacomini . . . and all other persons, firms or corporations liable or, who might be claimed to be liable, . . . from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever. . . . This is a Full and Final Release applying to all of the undersigned's known, unknown and unanticipated injuries or damages arising out of or in any way connected with or resulting from the incident described above.

Mot. Ex. 23, Ex. Page 094. However, State Farm refused to acknowledge that Van Etta was insured on the accident date. *See* Updated Joint Case Mgmt. Conf. Statement at 2-3 (ECF No. 18).

A month before the settlement, Van Etta filed the current lawsuit on October 11, 2011 in California Superior Court, alleging state law claims for breach of contract, tortious breach of the covenant of good faith and fair dealing, and declaratory relief as to the parties' rights and responsibilities regarding her insurance policy. *See* Compl. at 4-6. On October 9, 2012, State Farm removed the case to this Court under 28 U.S.C. ¶ 1441(a). *See* ECF No. 1. Fact discovery closed on December 13, 2013. *See* ECF No. 12. On December 20, 2013, State Farm filed this Motion seeking, in the alternative: (1) summary judgment on all of Van Etta's claims on the grounds that State Farm properly cancelled her policy; (2) summary judgment on all claims on the grounds that Van Etta previously released all claims in connection with her settlement with Giacomini; (3) partial summary judgment as to Van Etta's claim of tortious breach of the covenant of good faith; and (4) partial summary judgment as to punitive damages. *See* Mot. at 9-18. Van Etta filed an Opposition on January 21, 2014. *See* Mem. of Points and Authorities in Opp'n (ECF

No. 40, "Opp'n"). State Farm filed a Reply and objections to certain evidence on January 28, 2014. *See* ECF Nos. 41, 42.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," the Court may grant summary judgment. *Id.* at 249-50 (citations omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

## III.  DISCUSSION

The Court first addresses State Farm's request for summary judgment on all claims on the basis that State Farm properly cancelled Van Etta's policy effective September 21, 2010, and that Van Etta was therefore not insured on the date of the accident. Because the Court grants summary judgment on all claims in favor of State Farm on this basis, the Court does not reach the remaining issues that State Farm raises.

5

California law governing cancellation of insurance policies applies in this situation. By statute, an insurer may issue a notice of cancellation due to nonpayment of premium. *See* Cal. Ins. Code § 661(a)(1). "[W]here cancellation is for nonpayment of premium, at least 10 days' notice of cancellation accompanied by the reason for the cancellation shall be given." *Id.* § 662(a). "Proof of mailing or delivery of a notice of cancellation to a lienholder or an additional interest on a policy to which this chapter applies shall be sufficient to terminate the interest of the parties provided the notice is mailed or delivered at least the maximum number of days prior to termination of the parties' interest as required by Section 662." *Id.* § 662.1.

Here, there is no dispute that, assuming Van Etta was delinquent in her payments, State Farm complied with the California statutory requirements for noticing cancellation of Van Etta's policy. From June to August 2010, State Farm sent multiple Balance Due Notices to Van Etta stating that her account was in arrears. State Farm then sent a Cancellation Notice to Van Etta on September 8, 2010, more than 10 days prior to the cancellation effective date of September 21, 2010, and has provided proof of mailing. *See* Isenhart Decl. ¶¶ 6-9. Van Etta concedes that State Farm complied with the statutory procedures for policy cancellation and that she received the Balance Due Notices and the Cancellation Notice. *Cf.* Opp'n at 2.

Van Etta does dispute, however, whether State Farm was entitled to issue the cancellation notice at all. Van Etta raises two "factual premises" that could preclude summary judgment on this issue. First, she contends that her policy was effective on the accident date because she paid the entire sum of $179.00 that State Farm's employee quoted her on June 12, 2010, giving rise to a valid contract for a six-month insurance policy. *See* Opp'n at 2-3 & n.1. Second, she argues that "there is evidence that the allegedly unpaid $151.27 . . . was in fact paid on or about August 2, 2010." *Id.* at 3. The Court addresses each issue in turn below.

Regarding Van Etta's first disputed issue, the record establishes that her initial $179.00 payment went towards establishing a binder, not a full-fledged policy. "[A] binder evidences that the policy has not yet been issued since the binder is effective until one of two events: the insurance application is rejected or the policy is issued." *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 48 (1991); *see also* Cal. Ins. Code § 382.5 (defining a binder). On the same day that Van Etta

6

made her initial payment when purchasing her vehicle, State Farm issued a "Binder for State Farm Automobile Insurance" stating that the total premium for the six-month policy was $356.77, that Van Etta had paid only $179.00 of that total, and that the binder would last "for a period of 30 days." Mot. Ex. 15, Ex. Pages 074-075. Van Etta herself characterizes the policy she received on June 12, 2010 as a "Binder" that was transmitted to the car dealership to permit her to drive off the lot. Van Etta Decl. ¶ 2. State Farm subsequently issued a full policy, which Van Etta acknowledges receiving "[w]ithin a couple of weeks" after June 12, 2010 (*id*. ¶ 4), and which superseded the binder as explained above. *See Ahern*, 1 Cal. App. 4th at 48. Therefore, there can be no dispute that the written agreements show that Van Etta paid for and received only a temporary binder as of the time she purchased her car, and that Van Etta owed additional money on her policy.

Van Etta declares that, on June 12, 2010, a State Farm agent "quoted a price of $179.00 for such a policy for six months." *See* Van Etta Decl. ¶ 2. However, such evidence of a purported oral agreement cannot, as a matter of law, be used to directly contradict an express term of a written contract. *See* State Farm's Index of Objections (ECF No. 42) at 1. California law "does not go so far as to permit proof of a collateral agreement which contradicts an express provision of the written agreement. The reason for this is clear: it cannot reasonably be presumed that the parties intended to integrate two directly contradictory terms in the same agreement." *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 271 (1987); *see also* Cal. Code Civ. Proc. § 1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of . . . a contemporaneous oral agreement."); *George v. Am. Auto. Club of S. Cal.*, 201 Cal. App. 4th 1112, 1128-29 (2011) (holding that parol evidence could not contradict an unambiguous insurance policy limit and sustaining demurrer). Here, the State Farm Binder stated expressly that it was of limited duration and that the total premium exceeded $179.00. Thus, the Court concludes there can be no genuine issue of material fact as to whether Van Etta fully paid for a six-month policy on June 12, 2010.

Moreover, Van Etta does not deny receiving any of the multiple Balance Due Notices from State Farm that also expressly required Van Etta to pay additional sums to maintain her policy, nor does she allege that she ever attempted to contact State Farm to determine why any balance was due if the policy cost only $179.00. Those notices recited varying premium amounts ($356.77, $330.27, and $311.77), only one of which ($330.27) corresponds to the $151.27 that State Farm asserts as Van Etta's unpaid balance.[1] However, California courts have held that when an insurance cancellation notice states an incorrect amount due, such an error does not invalidate the notice. "Neither Insurance Code section 661 nor section 662 requires an insurance company to set forth in its notice of cancellation for nonpayment of premiums the amount of the arrearage. Inasmuch as an insurer need not state the amount of the arrearage, it follows that if the insurer does so, an error in the amount listed does not render the notice of cancellation ineffective." *Adams v. Explorer Ins. Co.*, 107 Cal. App. 4th 444, 449 (2003). In this respect, this case resembles *Adams*, where an uninsured motorist failed to pay premiums and suffered an accident a few weeks after his policy was cancelled: "The bottom line is that plaintiff did not pay his premiums in a timely manner. [Insurer] warned him in advance that his policy would be cancelled unless he paid a specified amount by a specified date. Plaintiff did not heed this warning." *Id.* at 450 (affirming summary judgment for insurer).

Regarding Van Etta's second disputed issue, Van Etta points to an account record that State Farm produced to suggest that she might have paid the outstanding $151.27 on August 2, 2010, which would have satisfied her obligations under the policy. *See* Opp'n at 3, 6. However, this

---

[1] As set forth above in Section I.A, State Farm's June 15, 2010 Balance Due Notice indicated that the total premium for the six-month policy was $356.77 and that Van Etta owed $177.77. *See* Mot. Ex. 3, Ex. Page 045. However, State Farm's June 21, 2010 Balance Due Notice indicated that the total premium was $330.27 and that Van Etta owed $151.27. *See* Mot. Ex. 4, Ex. Page 047. State Farm explains that a multi-policy discount caused these reductions. *See* Mot. at 4. State Farm's June 24, 2010 Declarations Page for the six-month policy includes two different total premiums: $311.77 and $330.27. *See* Mot. Ex. 1, Ex. Page 003. State Farm attempts to explain this discrepancy as the result of a further multi-policy discount. *See* Reply at 3 n.2. State Farm's August 9, 2010 Balance Due Notice indicated that the total premium was $330.27 and that Van Etta owed $151.27. *See* Mot. Ex. 6, Ex. Page 051. Similarly, State Farm's September 8, 2010 Cancellation Notice stated that Van Etta's unpaid balance was $151.27. *See* Mot. Ex. 7, Ex. Page 053.

allegation is likewise insufficient to raise a genuine dispute of material fact. The account record itself states "BAL DUE 151.27," which suggests—contrary to Van Etta's unsupported assertion—that an outstanding balance remained at that time. The bottom of the record includes the notation "DT 08-02-10," to which Van Etta points as an indicator of the date of August 2, 2010, but there is no indication in the record that the balance was paid, much less on that date. Furthermore, in her Declaration, Van Etta does not state affirmatively that she recalls paying the balance of her premium—only that, based upon her subsequent inspection of the account record (Van Etta Decl. Ex. A), "it appears that" she made such a payment. Her Declaration therefore supplies no additional facts beyond the account record, which shows that Van Etta had an unpaid balance of $151.27, and provides no independent basis for inferring that she paid the balance. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge."). Accordingly, even taking all factual inferences in Van Etta's favor, the account record provides no grounds for assuming that she paid the outstanding policy balance before the cancellation date. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (affirming summary judgment where nonmovant's evidence "establishes only that this set of events could conceivably have occurred; it does not give rise to a reasonable inference that it did in fact occur").

Van Etta invokes the general proposition that "a wrongful cancellation can be a violation of the covenant of good faith and fair dealing," citing *Helfand v. National Union Fire Insurance Co.*, 10 Cal. App. 4th 869 (1992). *See* Opp'n at 2. *Helfand* recited the principle that "[c]ancellation provisions in an insurance contract are subject to the implied covenant of good faith and fair dealing just like any other clause," in holding that cancellation of the liability insurance policy at issue was unlawful. *Id.* at 903. However, *Helfand* is wholly distinguishable from this case. There, the insurer had prior notice of pending lawsuits that would be covered by the existing liability policy and cancelled the policy on "arbitrary" grounds without conducting an investigation. *Id.* at 904-06. In Van Etta's case, the basis for cancellation was nonpayment of premium, and State Farm could not have known that Van Etta would be involved in a car accident only a few weeks after cancellation of her policy. Accordingly, there is no evidence that State Farm was attempting to

9

Case No.: 12-CV-05200-LHK
ORDER GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT

avoid a known, imminent liability, which could have demonstrated a breach of the implied covenant of good faith and fair dealing. Thus, *Helfand* is of little use to Van Etta here.

Despite Van Etta's argument that "none of the moving party's evidence forecloses the possibility that the cancellation notice itself was wrongful," Opp'n at 2, Van Etta has not presented adequate evidence to forestall summary judgment that State Farm's cancellation of her policy was not improper. Because summary judgment is proper on this basis, the Court does not reach the remaining issues that State Farm raises in its Motion.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS State Farm's motion for summary judgment on all of Van Etta's claims asserted against State Farm.

The Court notes that Van Etta initially pleaded claims against unnamed agents or employees of State Farm, and previously indicated that she would amend her pleadings to add new parties. *See* Joint Case Mgmt. Conf. Statement at 4 (ECF No. 10). However, the deadline for amending pleadings passed on April 1, 2013, and Van Etta has not added any named parties other than State Farm. Accordingly, all claims against all named parties have been resolved. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: March 17, 2014

_____
LUCY H. KOH
United States District Judge